1  David R. Bush, State Bar No. 154511
   LAW OFFICE OF DAVID R. BUSH
2  321 South Main Street #502
   Sebastopol CA 95472
3  Telephone: (707) 321-5028
   drbush@drbushlaw.com
4
   Attorney for Plaintiffs
5  ESTATE OF SANDRA LEE HARMON,
   by and through successor in interest SARAH GATLIFF,
6  and SARAH GATLIFF individually

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10

11 | ESTATE OF SANDRA LEE HARMON, by | Case No.
   | and through successor in interest SARAH |
12 | GATLIFF, and SARAH GATLIFF | **COMPLAINT FOR DAMAGES**
   | individually, |
13 | | **1. EXCESSIVE FORCE**
   |                    Plaintiffs, | **2. LOSS OF FAMILIAL ASSOCIATION**
14 | | **3. SPOLIATION OF EVIDENCE**
   |          v. | **4. CONSPIRACY**
15 | | **5. SUPERVISORY LIABILITY**
   | | **6. MUNICIPAL LIABILITY**
16 | COUNTY OF SAN MATEO, SAN MATEO | **7. WRONGFUL DEATH**
   | COUNTY SHERIFF'S OFFICE, SAN MATEO | **8. NEGLIGENCE**
17 | COUNTY DISTRICT ATTORNEY'S OFFICE, | **9. NEGLIGENT SUPERVISION,**
   | DAVID DOMINGUEZ, JOHN BABA, JAMES | **TRAINING, AND RETENTION**
18 | GOULART, CARLOS G. BOLANOS, |
   | STEPHEN M. WAGSTAFFE, CITY OF HALF | **(42 U.S.C. § 1983 and pendent state claims)**
19 | MOON BAY, and DOES 1-150, |
   | | *JURY TRIAL DEMANDED*
20 |                    Defendants. |
   | | *REQUEST FOR PUNITIVE DAMAGES*
21
22
23
24
25
26
27
28

1    COME NOW PLAINTIFFS, ESTATE OF SANDRA LEE HARMON, by and through

2    successor in interest SARAH GATLIFF, and SARAH GATLIFF individually, who make

3    complaint against each and every Defendant and allege as follows:

4                                    <u>INTRODUCTION</u>

5        1.    This civil rights action arises out of the killing of SANDRA LEE HARMON

6    ("HARMON")  on May 5, 2020, in Half Moon Bay, County of San Mateo, CA.  San Mateo

7    County Deputy Sheriff DAVID DOMINGUEZ ("DOMINGUEZ") fired first at Ms. HARMON,

8    a mentally ill woman, who then fired harmlessly away from him and in the air.  Then, as she

9    stood obeying his commands, with her arms and the shotgun above her head and her back to him,

10   DOMINGUEZ shot her fatally in the back despite the fact that she was not an imminent threat to

11   him or anyone else.  Even though she was fatally wounded, Ms. HARMON would continue to

12   live and to suffer for several more minutes.  San Mateo County Deputy Sheriff JOHN BABA

13   ("BABA") joined the scene, firing three rounds into Ms. Harmon in various parts of her body.  In

14   all, Ms. HARMON was shot eight times.  The San Mateo County Coroner's Office, who deemed

15   the killing a homicide, found DOMINGUEZ' first shot to the back was the fatal one, in

16   combination with one other shot to her back and an additional shot to the left side of her torso.

17       2.    Ms. HARMON was a loving mother to SARAH GATLIFF, and she was loved

18   deeply in return. Her death has been an immeasurable loss and sadness to Ms. GATLIFF.

19       3.     DOMINGUEZ, the San Mateo County deputy sheriff primarily responsible for

20   Plaintiff's death, violated standard police protocol and that of the SAN MATEO COUNTY

21   SHERIFF'S OFFICE ("SMCSO") at least twice on the night of the shooting: 1) by failing to wait

22   for back-up to arrive before proceeding to make contact with Ms. HARMON in the RV; and 2)

23   by failing to turn on his body camera when initiating contact with Ms. HARMON, despite

24   having ample time to do so.  In the alternative to DOMINGUEZ' failure to turn on his body

25   camera, DOMINGUEZ turned on his body camera, but the captured footage was not uploaded as

26

                                                                              1
27

28

1  required and its existence has been covered-up by all Defendants.  In either alternative, on the

2  night of the shooting, San Mateo County Deputy Sheriff JAMES GOULART ("GOULART")

3  was the sergeant in charge at the scene.  Inspectors from the SAN MATEO COUNTY

4  DISTRICT ATTORNEYS' OFFICE ("SMCDAO") were also present and took possession of

5  several items from DOMINGUEZ and BABA, except their body cameras; the deputies

6  maintained possession and control of those.  The footage from BABA's camera was held by

7  GOULART and/or BABA and was not uploaded to the investigators until the next day, 12-18

8  hours after the shooting.  Proper chain-of-custody information was not maintained for the BABA

9  video, nor for the body cameras of DOMINGUEZ or BABA; not by the deputies, GOULART,

10  nor the SMCDA inspectors.  At some point in time, the video was altered from high resolution to

11  low resolution by Defendants.  DOMINGUEZ then conspired with GOULART, BABA,

12  BOLANOS, and SMCSO in conjunction with SMCDAO and WAGSTAFFE to knowingly

13  publish the low resolution video marked as "unaltered" within the Critical Incident video.

14  Further, these Defendants purposefully failed to include critical audio recordings that

15  demonstrate unequivocally that DOMINGUEZ fired first at Ms. HARMON that night.  Acts of

16  spoliation of evidence by all Defendants include but are not limited to: presenting a false

17  statement of facts that includes the narrative that Ms. HARMON fired first, the Incident Report

18  filed by DOMINGUEZ; the Critical Incident video that was created by COUNTY OF SAN

19  MATEO, SMCSO, SMCDAO, BOLANOS, and by contract CITY OF HALF MOON BAY;

20  alteration of the BABA video; faulty and fraudulent investigation by WAGSTAFFE and

21  SMCDAO; and omitting any request for DOMINGUEZ' body camera records from Axon, the

22  company that controls the information.

23        4.      Although at all relevant times it was well known to Defendants SAN MATEO

24  COUNTY, SMCDAO, SMCSO, CITY OF HALF MOON BAY, WAGSTAFFE and BOLANOS

25  that 80% of all police shootings in the state involve mentally ill people, Defendants SAN

26

27

28

MATEO COUNTY, SMCSO, BOLANOS, and CITY OF HALF MOON BAY did not adequately train Defendants DOMINGUEZ and BABA to deal with mentally ill people in the community.  Instead, Deputies DOMINGUEZ and BABA were instructed repeatedly on tactical responses involving only the use of lethal force.

## JURISDICTION & VENUE

5.      This action is brought pursuant to 42 U.S.C. §§ 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

6.      The claims alleged herein arose in San Mateo County in the State of California. Venue for this action lies in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b)(2).

7.      Pursuant to Gov. Code Sec. 910, and the Governor's Executive orders extending the time to submit California government claims, six-months tort claims were timely submitted to the COUNTY OF SAN MATEO on November 4, 2020, and the CITY OF HALF MOON BAY on November 29, 2020, with supplemental tort claims submitted in January and February 2021.

8.      With respect to Plaintiffs' supplemental state claims, Plaintiffs request this Court exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

9.      Ms. HARMON was, at all relevant times, a resident of San Mateo County, and is the natural mother of SARAH GATLIFF.

10.      The claims made by the ESTATE OF SANDRA LEE HARMON, are brought by and through SARAH GATLIFF, the successor in interest to the Estate of SANDRA LEE

COMPLAINT FOR DAMAGES

1   HARMON pursuant to California Code of Civil Procedure § 377.32.  SARAH GATLIFF, an

2   individual, also brings her own claims for the wrongful killing of her mother.

3        11.    COUNTY OF SAN MATEO is a public entity situated in the State of California

4   and organized under the laws of the State of California. COUNTY OF SAN MATEO is

5   responsible for the actions, omissions, policies, procedures, practices and customs of its various

6   agents and agencies. At all times relevant to the facts alleged herein, COUNTY OF SAN

7   MATEO was responsible for assuring that the acts, omissions, policies, procedures, practices

8   and customs of its employees complied with the laws and the Constitutions of the United States

9   and of the State of California.

10        12.    SMCSO and SMCDAO are both subdivisions and/or agencies of COUNTY OF

11   SAN MATEO.

12        13.    At all relevant times, BOLANOS was the elected Sheriff of San Mateo County

13   and an agent of SAN MATEO COUNTY.

14        14.    At all relevant times, WAGSTAFFE was the elected District Attorney of San

15   Mateo County and an agent of SAN MATEO COUNTY.

16        15.    At all relevant times, DOMINGUEZ was a deputy sheriff and employee of the

17   COUNTY OF SAN MATEO, acting at the time of the shooting as CITY OF HALF MOON

18   BAY police, by contract between the SMCSO and the CITY OF HALF MOON BAY.

19        16.    At all relevant times, BABA was a deputy sheriff and employee of the COUNTY

20   OF SAN MATEO, acting at the time of the shooting as CITY OF HALF MOON BAY police, by

21   contract between the SMCSO and the CITY OF HALF MOON BAY.

22        17.    At all relevant times, GOULART was a deputy sheriff with the rank of sergeant

23   and employee of the COUNTY OF SAN MATEO, acting at the time of the shooting as CITY OF

24   HALF MOON BAY police, by contract between the SMCSO and the CITY OF HALF MOON

25   BAY.

26

27                              COMPLAINT FOR DAMAGES                                    4

28

18.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 150, inclusive, are unknown to the Plaintiffs, who therefore sue said Defendants by such fictitious names. Defendants DOES 1 through 150, and each of them, were responsible in some manner for the injuries and damages alleged herein. Plaintiffs are informed and believe and thereupon allege upon information and belief that each of them is responsible, in some manner, for the injuries and damages alleged herein.

19.     In doing the acts and/or omissions alleged herein, the individual Defendants, including DOES 1 through 150, acted in concert with each of the other Defendants herein.

20.     At all relevant times, BOLANOS acted under color of state law in the course and scope of his duties as the Sheriff of San Mateo County.

21.     At all relevant times, WAGSTAFFE acted under color of state law in the course and scope of his duties as the Sheriff of San Mateo County.

22.     At all relevant times, DOMINGUEZ, BABA and GOULART acted under color of state law in the course and scope of their duties as agents and employees of the COUNTY OF SAN MATEO.

23.     Each of the Defendants caused and is responsible for the unlawful conduct resulting in the death of SANDRA LEE HARMON by personally participating in the conduct, or acting jointly and in concert with others who did so; or by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; or by promulgating policies and procedures pursuant to which the unlawful conduct occurred; or by failing and refusing to initiate and maintain adequate supervision, discipline, and/or training; or by liability through contractual relations.

///

COMPLAINT FOR DAMAGES

STATEMENT OF FACTS

24.     SANDRA LEE HARMON was fifty-six years old when she was killed by San Mateo County Deputy Sheriff DOMINGUEZ.  Plaintiff was a functional member of society despite her mental illness.  She had no history of violence or arrest.

25.     On May 5, 2020, Ms. HARMON became agitated about an impending "race war" and began walking around downtown Half Moon Bay to warn people to be safe.  At the time, she was seen carrying a shotgun in a non-threatening position and a bottle of wine.  A witness called 9-1-1 from downtown and told the operator what was happening and reported under questioning that she had not been threatened in any way.  In fact, just the opposite, she said Ms. HARMON was warning people to be safe.

26.     Within minutes of the 9-1-1 call, San Mateo County Sheriff deputies, including DOMINGUEZ, acting as *de facto* Half Moon Bay Police, arrived downtown and began asking people if they had seen Ms. HARMON.  Deputies also found the 9-1-1 caller, who provided no further information, but while interviewing her another male individual approached and mentioned the "trailer behind Pasta Moon" (the "RV") as a possible location for HARMON.  Deputies searched downtown for more than 20 minutes but did not find Ms. HARMON.  Then, for reasons unknown, DOMINGUEZ proceeded alone to Pasta Moon restaurant to check the RV.

27.     DOMINGUEZ, who had been on the force for at least 20 months at the time, drove to Pasta Moon restaurant where there was a lone RV in the rear corner of the parking lot.  For reasons unknown and in violation of San Mateo County Sheriff protocol and basic policing protocol, DOMINGUEZ failed to request or to wait for back-up before approaching the RV.  He pounded on the side of the RV and ordered the occupants to exit.  Ms. HARMON looked out the side door and exited the RV holding the shotgun in a non-threatening position.  DOMINGUEZ immediately panicked and began retreating backwards towards his vehicle as he discharged three

1  rounds in quick succession, possibly wounding her in her right arm, even though Ms. HARMON

2  had not fired the shotgun.  Ms. HARMON discharged two rounds harmlessly into the air in a

3  direction toward the restaurant and away from DOMINGUEZ, who was moving to the front of

4  his vehicle.  Ms. HARMON then emerged from behind the RV and DOMINGUEZ began rapidly

5  shooting at her while simultaneously shouting orders.  DOMINGUEZ ordered Ms. HARMON to

6  stand holding the shotgun with both hands over her head and her back to the deputy.  Ms.

7  HARMON immediately complied.  When DOMINGUEZ fired his fourth shot into HARMON

8  she had her back to DOMINGUEZ, with her arms above her head and the shotgun held

9  horizontally in both hands so it was impossible to fire.  At the moment of the fifth and final shot

10  of the series, the shotgun was laying approximately four to six feet away from her, having fallen

11  from above her head on the fourth shot.

12        28.      Since she had just been shot while complying with orders, Ms. HARMON

13  understandably reacted in fear as BABA and DOMINGUEZ both continued to shout at her.  First

14  she attempted to flee, but realizing she had no escape she turned back towards the deputies and

15  screamed at them in frustration.  She then ran back to the shotgun that was lying on the ground

16  from where she had dropped it and as she reached down she was shot an additional 6 times by

17  both deputies.  But for the wrongful actions of DOMINGUEZ, Ms. HARMON would not have

18  felt the need to react as she did; attempting to protect herself from further attack by

19  DOMINGUEZ.

20        29.      These events were partially captured on both the body-worn camera of BABA,

21  who arrived on the scene after the shooting had begun, and audio recording devices from BABA

22  and other deputies.  BABA's video shows HARMON with her hands above her head and her

23  back to DOMINGUEZ for several seconds proceeding and at the moment she is fatally wounded.

24        30.      The audio files obtained from the recording devices of BABA and other deputies

25  all confirm that DOMINGUEZ discharged his weapon three times ***prior*** to any shots that Ms.

26

27                          COMPLAINT FOR DAMAGES                                    7

28

Harmon might have fired, despite DOMINGUEZ and the other Defendants falsely reporting that Ms. HARMON fired first.

31.     In the official investigation by the SMCDAO and WAGSTAFFE, DOMINGUEZ' violations of protocol are purposefully not cited as violations of protocol: failure to turn on his body camera when initiating contact and failure to call in and wait for back-up at the scene.  The body camera violation was dismissed as an acceptable mistake, despite the fact DOMINGUEZ initiated the contact while under no time pressure at all, while the failure to wait for back-up was simply ignored.  Then, in furtherance of the wrongdoing, SMCDAO and WAGSTAFFE refused to subpoena Axon camera log files to determine if DOMINGUEZ' body camera or vehicle cameras had actually been activated, instead saying the investigators took DOMINGUEZ "at his word," even though he was the person being investigated.  Unbelievably, they did not consider audio files from the Deputies' cars and cameras that were readily available.  Failing to subpoena the records and consider the audio files were purposeful acts to assist in concealing, suppressing, or destroying certain facts and records and spoliating the evidence.

32.     Also omitted in WAGSTAFFE'S official investigation report was any discussion of why DOMINGUEZ fired his weapon first and why he fired at a person standing with her arms above her head and her back to the deputy.  These acts further demonstrate the relationship of conspiracy and convenience between the SMCDAO, DOMINGUEZ, WAGSTAFFE, BOLANOS, and the other Defendants.  All of these acts were performed in violation of duties, laws, and/or to mislead the public about the killing of Ms. HARMON.

33.     The most egregious public-facing act of SMCDAO and WAGSTAFFE, done in concert with the SMCSO, DOMINGUEZ and BABA, was the release of the "Critical Incident Video" on the SMCSO website on June 15, 2020.  This video primarily contains the BABA body camera footage of the shooting with BOLANOS talking.  In the presentation to the public, BABA's video of the shooting is presented in low resolution although it had been shot in high

resolution and it is specifically labeled "Unaltered."  It had been altered by reducing the bit-rate to less than 50% of the original, making the video grainy and pixilated. This act of spoliating evidence and then presenting it as "unaltered" was done purposefully to mislead the public and to suppress certain facts and actions of the Sheriff's deputies with regard to the shooting of Ms. HARMON.  These acts violate both state and federal law and were done in concert with all other Defendants.

34.     In the alternative to DOMINGUEZ' violation for failure to turn on his body camera, DOMINGUEZ did turn his body camera on as he approached the RV at Pasta Moon restaurant, and captured the entire scene involving Ms. HARMON's shooting from his body camera.  In violation of law, procedure and protocol, DOMINGUEZ then took steps, in collusion with all other Defendants, to conspire to conceal, suppress, and/or destroy the evidentiary video footage so that it was not available for review.  WAGSTAFFE and BOLANOS are both aware the footage exists or existed, or they failed to take reasonable steps to determine if the footage exists or existed, and then misrepresented to the public the thoroughness of the investigation and the non-existence of DOMINGUEZ' body camera footage.  This was done for purposes of concealing facts and suppressing or altering evidence.

STATEMENT OF DAMAGES

35.     As a result of the acts and/or omissions alleged herein, Plaintiff SANDRA LEE HARMON, bringing this action by and through her Estate, suffered general damages including extreme and severe pain and suffering, both physical and mental, in an amount to be determined according to proof.

36.     As a result of the acts and/or omissions alleged herein SARAH GATLIFF, an individual, was deprived of familial association with her mother, including the loss of her comfort and society in an amount to be determined according to proof.  Further, GATLIFF suffered extreme emotional distress at the release of the distorted Critical Incident video.

COMPLAINT FOR DAMAGES

9

37.     The acts and omissions of Defendants COUNTY OF SAN MATEO, SMCSO, SMCDAO, DOMINGUEZ, BABA, BOLANOS, WAGSTAFFE, and CITY OF HALF MOON BAY were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs.  Plaintiffs therefore pray for an award of punitive and exemplary damages against these Defendants in an amount according to proof.

38.     Plaintiffs have retained private counsel to represent them in this matter and are entitled to an award of attorneys' fees and costs.

CAUSES OF ACTION

**FIRST CAUSE OF ACTION**

[42 U.S.C. § 1983 – EXCESSIVE FORCE – DEFENDANTS DOMINGUEZ AND BABA]

39.     Plaintiffs hereby re-allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

40.     Defendants DOMINGUEZ and BABA violated SANDRA LEE HARMON's right to be free from excessive and unreasonable force as guaranteed by the First and Fourth Amendments to the United States Constitution.

41.     An objectively reasonable officer would have known that the use of excessive and unreasonable force on SANDRA LEE HARMON would cause severe and excruciating pain and suffering and death.

42.     Defendants DOMINGUEZ and BABA acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to Plaintiff's rights.

43.     These Defendants' misconduct caused Plaintiff to suffer excruciating pain, mental anguish, and fear before she died.

WHEREFORE, Plaintiff Estate of SANDRA LEE HARMON prays for relief as hereinafter set forth.

10

1

**SECOND CAUSE OF ACTION**

2

[42 U.S.C. § 1983 – DEPRIVATION OF FAMILIAL ASSOCIATION –

3

DEFENDANTS DOMINGUEZ AND BABA]

4          44.     Plaintiffs hereby re-allege and incorporate by reference as though fully set forth

5     herein all prior paragraphs of this Complaint.

6          45.     By and through the acts and omissions alleged herein, Defendants DOMINGUEZ

7     and BABA deprived Plaintiffs of the familial relationship between mother and daughter, thereby

8     violating both Plaintiffs' rights under the First and Fourteenth Amendments to the Constitution

9     of the United States.  These Defendants acted with deliberate indifference and/or a purpose to

10    harm SANDRA LEE HARMON, thus causing her death.

11    WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

12

**THIRD CAUSE OF ACTION**

13

[42 U.S.C. § 1983 – SPOLIATION OF EVIDENCE -

14

ALL DEFENDANTS]

15         46.     Plaintiffs hereby re-allege and incorporate by reference as though fully set forth

16    herein all prior paragraphs of this Complaint.

17         47.     By and through the acts and omissions alleged herein, Defendants and each of

18    them acted individually and in concert to suppress, tamper with, change, and/or conceal pertinent

19    evidence instead putting forth a knowingly false narrative.  This was known by DOMINGUEZ,

20    BABA, GOULART, and possibly other deputies present that night.  This false information

21    became known to BOLANOS, WAGSTAFFE, SMCDAO, and SMCSO, who acted or omitted

22    actions to further spoliate the evidence.  The deliberate and intentional acts of spoliation include

23    but are not limited to: actively concealing the evidence that showed that DOMINGUEZ fired

24    first, including audio and video files, as well as actively working to alter, suppress and/or

25    eliminate entirely the footage of Ms. HARMON being shot in the back by DOMINGUEZ while

26

27

28

1  she was unarmed.  Finally, all Defendants were involved with the filing of multiple incident
2  reports and the publication of the Critical Incident video, all of which stated known inaccuracies.
3  WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

4                          **FOURTH CAUSE OF ACTION**
5                      [42 U.S.C. § 1983 – CONSPIRACY –
6                              ALL DEFENDANTS]
7        48.    Plaintiffs hereby re-allege and incorporate by reference as though fully set forth
8  herein all prior paragraphs of this Complaint.
9        49.    Through their collective acts and actions, SMCSO, BOLANOS, DOMINGUEZ,
10  BABA, and GOULART agreed with SMCDAO and WAGSTAFFE, and CITY OF HALF
11  MOON BAY to present inaccurate facts to the family of Ms. HARMON, knowingly present a
12  false narrative to the public, alter video and present it as "unaltered", suppress pertinent audio
13  and video files for the purpose of concealing Defendants' wrongdoing and to avoid civil and
14  criminal liability.  Acting in furtherance of the conspiracy, Defendants presented false reports,
15  spoke falsely to the public, published the altered Critical Incident video, and omitted audio files.
16  All acts and omissions were done with knowledge and intent.
17  WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

18                          **FIFTH CAUSE OF ACTION**
19   [42 U.S.C. §1983 – SUPERVISORY LIABILITY – DEFENDANT CARLOS G. BOLANOS]
20        50.    Plaintiffs hereby re-allege and incorporate by reference as though fully set forth
21  herein all prior paragraphs of the Complaint.
22        51.    In 2016, Defendant BOLANOS was elected Sheriff of San Mateo County after
23  serving as undersheriff for nine years, where he ran the day-to-day operations of the office.  In
24  these capacities, Defendant BOLANOS was on notice for many years that 80% of all police
25  shootings involve mentally ill individuals.  Despite this knowledge and experience, BOLANOS
26
27                          COMPLAINT FOR DAMAGES                                    12
28

failed to train his deputies, including DOMINGUEZ and BABA, in tactics to deal with mentally persons, de-escalation tactics, and the use of non-lethal force with such persons.  Such training is basic, usual, and necessary in the course of running a Sheriff's office.  Failing to provide adequate training to his deputies led to DOMINGUEZ responding with lethal force to Ms. HARMON as she stood with her hands above her head and her back to DOMINGUEZ complying with his orders.

52.    BOLANOS knew that DOMINGUEZ was improperly trained and as a direct result would be unable to properly handle a situation like that of May 5, 2020, in Half Moon Bay, yet he failed to take any remedial steps to prevent such lethal encounters, constitutional violations, and improper policing of the community.  Defendant BOLANOS engaged in conduct through these acts and omissions that demonstrated a reckless and callous indifference to the rights of the public he was elected to serve, including SANDRA LEE HARMON.

53.    The conduct of Defendant BOLANOS was so closely related to the deprivation of Plaintiffs' rights as to have been the moving force that caused Ms. HARMON's suffering and death.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION

[42 U.S.C. §1983 – MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOMS AND PRACTICES – DEFENDANTS COUNTY OF SAN MATEO

AND CITY OF HALF MOON BAY]

54.    Plaintiff hereby re-alleges and incorporates through reference all prior paragraphs of the Complaint.

55.    On or before May 5, 2020, and prior to Ms. HARMON's death, Defendant COUNTY OF SAN MATEO and CITY OF HALF MOON BAY were aware that San Mateo County Sheriff's deputies were improperly trained, engaged in a custom and practice of reckless

13

and dangerous use of violence especially when dealing with mentally ill persons, and that DOMINGUEZ and BABA were improperly trained and thus would cause escalation of the situations they responded to.  Further, nearly all training they did receive focused on lethal force as the only alternative.

56.     Through its final policymakers the COUNTY OF SAN MATEO and CITY OF HALF MOON BAY, acting with deliberate indifference to the rights of Ms. HARMON and her family, and of the public in general, knowingly maintained, enforced, and applied customs and practices of:

a. Encouraging, accommodating, or ratifying DOMINGUEZ's use of excessive, unreasonable, and deadly force against mentally ill persons.

b. Encouraging, accommodating, or facilitating a code of silence among deputies, employees, and supervisors, pursuant to which false reports were generated, evidence was spoliated, excessive and unreasonable force was covered up, whistleblowers were punished, and internal and District Attorney investigations were performed with predetermined outcomes. Further, vital evidence was purposefully not requested or sought in the investigation of the shooting by the SMCDAO and WAGSTAFFE, and instances of perjury and dishonesty were ignored.

c.     Employing and retaining deputies such as DOMINGUEZ and BABA, who the County knew, or in the exercise of reasonable care should have known, were violent, abused their authority, and mistreated members of the public, especially those with mental illness.

d.     Inadequately supervising, training, and disciplining deputies including DOMINGUEZ and BABA, who the County knew, or in the exercise of reasonable care should have known, would improperly escalate any confrontation, would improperly use lethal force, would be violent, would abuse their authority, and would mistreat members of the public.

14

e.      Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling reckless and intentional misconduct by deputies, especially by using the SMCDAO to investigate all police shootings and failing to follow minimally sufficient investigation protocols and procedures.

f.      NEVER disciplining deputies for excessive force, no matter the circumstances, thereby adopting a de facto policy that deputies would never be disciplined no matter how much force they used.  Deputy DOMINGUEZ was aware of this practice.

57.      By reason of the aforementioned customs and practices, SANDRA LEE HARMON was grievously injured and subjected to unbearable and excruciating physical and mental pain and suffering, before being ultimately killed.

58.      COUNTY OF SAN MATEO through officials named and unnamed had actual or constructive knowledge of the constitutionally deficient customs and practices alleged above. Yet despite this knowledge, COUNTY OF SAN MATEO accepted and condoned these illegal customs and practices, thereby ratifying them, and acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to rights of Ms. HARMON, her family, and the general public.

59.      These customs and practices were so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injuries to SANDRA LEE HARMON.

60.      By reason of the aforementioned acts and omissions, SANDRA LEE HARMON was killed, and her daughter suffered the irreparable loss of her love, affection, society, and moral support.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

15

1

<u>PENDENT STATE CLAIMS</u>

2

**SEVENTH CAUSE OF ACTION**

3

[WRONGFUL DEATH/NEGLIGENCE PER SE – DEFENDANTS COUNTY OF

4

SAN MATEO AND DOMINGUEZ]

5
6

61.    Plaintiff hereby re-alleges and incorporates through reference all prior paragraphs of the Complaint.

7
8
9
10
11
12
13

62.    Defendant DOMINGUEZ, while working in the course and scope of his employment as a San Mateo County deputy sheriff, employed negligent tactics and intentionally and/or without due care killed SANDRA LEE HARMON. Plaintiff's death directly resulted from DOMINGUEZ's unsafe, improper, unnecessary, and negligent acts, and as a result of these intentional and negligent acts, SANDRA LEE HARMON suffered serious physical and mental injuries and ultimately died.  DOMINGUEZ lacked any reasonable justification for killing SANDRA LEE HARMON.

14
15

63.    DOMINGUEZ's actions were in direct violation of Cal. Pen. Code § 835(a), use of force by a police officer.

16
17

64.    DOMINGUEZ's actions were in direct violation of Cal. Pen. Code § 243(d), battery causing serious bodily injury.

18
19

65..    DOMINGUEZ's actions were in direct violation of Cal. Pen. Code § 245(a)(1), assault with a deadly weapon.

20
21

66.    DOMINGUEZ's actions were in direct violation of Cal. Pen. Code § 245(a)(4), assault with force likely to cause great bodily injury.

22
23
24

67.    DOMINGUEZ's actions were in direct violation of Cal. Pen. Code §§ 192(a), voluntary manslaughter, 192(b), involuntary manslaughter, and/or 187(a), murder in the second degree.

25
26
27
28

16

68.     The violations of these laws were a substantial factor in causing the death of SANDRA LEE HARMON.

69.     The COUNTY OF SAN MATEO is vicariously liable for the unlawful acts and omissions of  DOMINGUEZ as alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**

[NEGLIGENT TRAINING, SUPERVISION, AND RETENTION – DEFENDANT COUNTY OF SAN MATEO and CITY OF HALF MOON BAY]

70.     Plaintiff hereby re-alleges and incorporates by reference all prior paragraphs of the Complaint.

71.     The COUNTY OF SAN MATEO hired DOMINGUEZ as a Deputy Sheriff.

72.     The COUNTY OF SAN MATEO became aware that DOMINGUEZ was unfit to perform the work for which he was hired due to lack of training and experience.  Prior to May 5, 2020, the COUNTY OF SAN MATEO knew that DOMINGUEZ was not trained, or improperly trained, in dealing with mentally ill persons, as well in de-escalation tactics.  Instead of such proper and critical training in the interests of safely serving the mentally ill population of San Mateo County, the COUNTY OF SAN MATEO provided extensive tactical training in how to exert lethal force as the only alternative.  Despite this knowledge, the County refused to address DOMINGUEZ's glaring deficiencies as a deputy sheriff and allowed his dangerousness to go unmitigated, absent appropriate training or discipline.  CITY OF HALF MOON BAY is liable through contract.

73.     The negligence of the COUNTY OF SAN MATEO in training, supervising, and retaining  DOMINGUEZ was a substantial factor in causing the death of SANDRA LEE HARMON.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

17

COMPLAINT FOR DAMAGES

PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

1.    For compensatory and economic damages according to proof;

2.    For general damages according to proof;

3.    For an award of exemplary or punitive damages against the individual Defendants;

4.    For an award of attorneys' fees and costs as permitted by law; and

5.    For such other and further relief as the Court may deem necessary and appropriate.

JURY TRIAL DEMANDED

Plaintiff hereby requests a jury trial on all issues so triable.

Dated:  03/01/2021

Respectfully Submitted,
LAW OFFICE OF DAVID R. BUSH

By: _____/david r. bush/_____
David R. Bush, Attorney for Plaintiffs
ESTATE OF SANDRA LEE HARMON
and SARAH GATLIFF

18