JOHN D. NIBBELIN, COUNTY COUNSEL (SBN 184603)
By: Joseph F. Charles, Deputy (SBN 228456)
By: Karen Rosenthal, Deputy (SBN 209419)
By: Daniel McCloskey, Deputy (SBN 191944)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA  94063
Telephone:  (650) 363-4647
Facsimile:  (650) 363-4034
E-mail: jcharles@smcgov.org
E-mail: krosenthal@smcgov.og
E-mail: dmccloskey@smcgov.org

Attorneys for Defendants
COUNTY OF SAN MATEO, DAVID
DOMINGUEZ. JOHN BABA, CITY OF HALF
MOON BAY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ESTATE OF SANDRA LEE HARMON, by and through successor in interest SARAH GATLIFF, and SARAH GATLIFF individually, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN MATEO, CITY OF HALF MOON BAY, DAVID DOMINGUEZ. JOHN BABA, and DOES 1-150, <br><br> Defendants. | Case No. 21-CV-01463-VC <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANT JOHN BABA** <br><br> **Hearing** <br><br> Date:　　June 30, 2022 <br> Time:　　2:00 p.m. <br> Dept:　　Courtroom 4 – 17th Floor <br>　　　　450 Golden Gate Avenue <br>　　　　San Francisco, CA 94102 <br><br> **THE HONORABLE VINCE CHHABRIA** |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on June 30, 2022, at 2:00 p.m., or at another date and time determined by the Court, before the Honorable Judge Vince Chhabria of the United States District Court for the Northern District of California located at Courtroom 4 - 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant John Baba ("Baba") will and hereby does move for judgment on the pleadings seeking to dismiss the two remaining claims asserted against him in Plaintiffs' Second Amended Complaint ("SAC"), namely, the First Claim for 42 U.S.C. § 1983 for Excessive Force/Unreasonable Seizure in violation of the Fourth Amendment to the United States Constitution and the Fourth Claim for Wrongful Death based on California state law.

This Motion for judgment on the pleadings is made pursuant to Fed. R. Civ. P. 12(c) and on the grounds that Plaintiffs' SAC fails to allege sufficient facts to state claims for excessive force or wrongful death  as against Deputy John Baba.

Defendant Baba bases his Motion on this Notice, the Memorandum of Points and Authorities that follows, and the accompanying Request for Judicial Notice and exhibits attached thereto, as well as oral argument or any other matter properly before the Court.

**TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ................................................................................................. 1

II.  RELEVANT FACTS ............................................................................................ 2

    A.  Deputy Baba did not fire his gun until after Harmon fired her shotgun twice, attempts to flee, and tries to pick her shotgun up off the ground in defiance of Officer commands. ............................................................................................... 2

    B.  The SAC alleges five separate times that it was Dominguez that killed Harmon, not Baba. ............................................................................................................. 3

III.  ARGUMENT ....................................................................................................... 4

    A.  Legal Standard Governing a Motion for Judgment on the Pleadings ................................ 4

    B.  The First Cause of Action for Excessive Force as against Deputy Baba Must Be Dismissed Because the SAC Admits that the Force He Used Was Objectively Reasonable ........................................................................................................... 5

    C.  Qualified Immunity Applies Here Because There was No Clearly Established Precedent that Deputy Baba's Alleged Conduct Was Unlawful at the Time of the Incident ................................................................................................................. 9

    D.  The Fourth Claim for Wrongful Death Should be Dismissed Against Baba Because the SAC Fails to Allege that He Committed an Underlying Tort Resulting in Harmon's Death ................................................................................................... 12

    E.  Leave to Amend Should Be Denied Unless Plaintiffs Can Make an Offer of Proof to the Court That Amendment is Possible. ..................................................... 13

IV.  CONCLUSION .................................................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**<u>Federal Cases:</u>**

*Alexander v. City of Chicago*,
   994 F2d 333 (7th Cir. 1993) ..............................................................................................4

*Ashcroft v. al–Kidd*,
   563 U.S. 731 (2011)..........................................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................4

*Blanford v. Sacramento Cty.*,
   406 F.3d 1110 (9th Cir. 2005) ............................................................................................9

*Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*,
   149 F.3d 971 (9th Cir. 1998) ............................................................................................10

*Chavez v. U.S.*,
   683 F.3d 1102 (9th Cir.2012) .........................................................................................4, 5

*Chavez v. Wynar*,
   421 F.Supp.3d 891 (N.D. Cal. 2019) ..................................................................................9

*City and Cnty. of San Francisco v. Sheehan*,
   135 S.Ct. 1765 (2015)........................................................................................................9,

*City of Tahlequah v. Bond*,
   No. 20-1668, 142 S.Ct. 9, 211 L.Ed.2d 170 (Oct. 18, 2021) [summary judgment affirmed..............7, 11

*Deorle v. Rutherford*,
   272 F.3d 1272 (9th Cir. 2001) ........................................................................................8, 9

*Dist. of Col. v. Wesby*,
   138 S.Ct. 577 (2018)..........................................................................................................10

*Elifritz v. Fender*,
   460 F. Supp. 3d 1088 (D. Or. 2020) ...................................................................................9

*Estate of Osuna v. Co. of Stanislaus*,
   392 F.Supp.3d 1162 (E.D.Cal. 2019)................................................................................12

*Estate of Strickland v. Nevada County*,
   2021 WL 4443106 (Sept. 28, 2021 E.D. Cal.)............................................................5, 7, 9

*Fayer v. Vaugh*,
   649 F.3d 1061 (9th Cir. 2011) ...................................................................................8

*Fleming v. Pickard*,
   581 F3d 922 (9th Cir. 2009) .....................................................................................5

*Glenn v. Washington Cty.*,
   673 F.3d 864, fn. 8 (9th Cir. 2011) ...........................................................................6

*Gonzalez v. City of Anaheim*,
   747 F.3d 789 (9th Cir. 2014) ....................................................................................6

*Graham v. Connor*,
   490 U.S. 386 (1989).............................................................................................5, 9

*Groten v. California*,
   251 F.3d 844 (9th Cir. 2001) ....................................................................................9

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F3d 419 (2nd Cir. 2011).....................................................................................5

*Lonberg v. City of Riverside* (CD CA 2004),
   300 F.Supp.2d 942 (C.D. Cal. 2004) ......................................................................13

*Long v. City & Co. of Honolulu*,
   511 F.3d 901 (9th Cir. 2007) ....................................................................................7

*Los Angeles v. Mendez*,
   __ U.S. __, 137 S.Ct. 1539 (2017).............................................................................6

*Martinez v. Stanford*,
   323 F.3d 1178 (9th Cir. 2003) .................................................................................11

*Massey v. Ojaniit*,
   759 F3d 343 (4th Cir. 2014) .....................................................................................5

*McGann v. Ernst & Young*,
   102 F.3d 390 (9th Cir.1996) .....................................................................................4

*Miller v. Indiana Hosp.*,
   562 F.Supp. 1259 (WD PA 1983)..............................................................................4

*Moss v. United States Secret Service*,
   572 F.3d 962 (9th Cir.2009) .....................................................................................5

*Mullenix v. Luna*,
   136 S.Ct. 305 (2015)................................................................................................10

*Nehad v. Browder*,
   929 F.3d 1125 (9th Cir. 2019) ..................................................................................5

*Orn v. City of Tacoma*,
   949 F.3d 1167 (9th Cir. 2020) ............................................................................6, 8

*Pearson v. Callahan*,
   555 U.S. 223, 129 S.Ct. 808 (2009)....................................................................9, 10

*Perez v. Wells Fargo & Co.*,
   75 F.Supp.3d 1184 (ND Cal. 2014) ..........................................................................4

*Reichle v. Howards*,
   566 U.S. 658 (2012)................................................................................................10

*Romero v. Kitsap Co.*,
   931 F.2d 624 (9th Cir. 1991) ...................................................................................11

*Ryburn v. Huff*,
   565 U.S. 469 (2012)..................................................................................................6

*S.B. v. Cty. Of San Diego*,
   864 F.3d 1010 (8th Cir. 2017) ..............................................................................6, 8

*Saucier v. Katz*,
   533 U.S. 194, 121 S.Ct. 2151 (2001) .....................................................................10

*Scott v. Harris*,
   550 U.S. 372 (2007)...............................................................................................5, 6

*Scott v. Heinrich*,
   39 F.3d 912 (9th Cir. 1994) ......................................................................................7

*Serrano v. Francis*,
   345 F.3d 1071 (9th Cir. 2003) .................................................................................11

*Shafer v. Cty. of Santa Barbara*,
   868 F.3d 1110 (9th Cir. 2017) .................................................................................10

*Sweaney v. Ada Co., Idaho*,
   119 F.3d 1385 (9th Cir. 1997) .................................................................................11

*Taylor v. Barkes*,
   575 U.S. 822, 135 S.Ct. 2042, 192 L.Ed.2d 78 (2015)..........................................10

*Tennessee v. Garner*,
   471 U.S. 1 (1985)................................................................................................5, 6, 8

*White v. Pauly*,
   137 S. Ct. 548 (2017)..............................................................................................10

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
DEFENDANT JOHN BABA

**State Cases:**

*Lattimore v. Dickey*,
   239 Cal.App.4th 959 (2015) ................................................................................12


**Federal Statutes:**

42 U.S.C. § 1983 .......................................................................................................... i, 9

**Federal Rules of Civil Procedure:**

Rule 11 .......................................................................................................................13

Rule 12(b)(6).....................................................................................................4, 5, 9, 13

12(c) ............................................................................................................. i, 4, 5, 9 , 13

**State Statutes:**

Cal. Code of Civ. Proc. § 377.60(a)...........................................................................12

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
DEFENDANT JOHN BABA

# I.   INTRODUCTION

With the pleadings now closed, Defendant Deputy John Baba moves for judgment on the pleadings as to the remaining two claims asserted against him by Plaintiffs: the First Claim for Excessive Force and the Fourth Claim for Wrongful Death.  The grounds for the motion are that the Second Amended Complaint ("SAC") fails to allege sufficient facts to state either claim against Baba and the SAC should be dismissed with prejudice as to Deputy Baba.

As to the First Claim for Excessive Force, the SAC admits that Deputy Baba did not fire his gun at Ms. Harmon until ***after*** she fired her weapon twice in the presence of law enforcement, tried to flee the scene in defiance of officer commands, then ran back towards the officers and her shotgun that was on the ground, reaching for it to pick it up despite several repeated orders by both Deputies Baba and Dominguez. In that instant, as Ms. Harmon ran back to pick up the shotgun, a shotgun that the SAC admits she just fired twice in the presence of law enforcement, Deputy Baba was forced to make a split-second judgment — under circumstances that were tense, uncertain, and rapidly evolving —in which his very life, and possibly the lives of others, was being threatened.  In light of these circumstances as well as controlling legal authority, Deputy Baba's actions were objectively reasonable under the Fourth Amendment and Plaintiffs have failed to sufficiently allege an excessive force claim against him.

Additionally, the First Claim should be dismissed as to Deputy Baba because his conduct is protected by qualified immunity.  At the time of the incident, there was no then-existing precedent that clearly defined that Deputy Baba's conduct under these circumstances was clearly unlawful such that every reasonable officer would have understood that what he was doing violated Ms. Harmon's Fourth Amendment rights. No such case law existed then and no such case law exists now.

As to the Fourth Claim for wrongful death, because there are insufficient allegations to support an excessive force claim there is no allegation of an underlying tort committed by Deputy Baba which is an essential element to sustain a claim for wrongful death.  Moreover, the SAC alleges five (5) separate times that it was Deputy Dominguez who caused Harmon's death.  Plaintiffs also admitted during the January 13, 2022 hearing on Defendants' motion to dismiss that the allegations in the SAC claim that it was Dominguez that fired the "fatal shot."  Since none of the shots fired by Deputy Baba are alleged to have caused Ms. Harmon's death – also an essential element for a wrongful death claim – the SAC fails to allege

1    sufficient facts to sustain the Fourth Claim against Deputy Baba and it should likewise be dismissed.

2          Since the pleadings are closed and the last date to amend the pleadings expired on March 31, 2022,

3    First and Fourth Claims against Deputy John Baba should be dismissed from this lawsuit with prejudice.

4    **II.    RELEVANT FACTS**

5          **A. Deputy Baba did not fire his gun until after Harmon fired her shotgun twice, attempts to flee, and tries to pick her shotgun up off the ground in defiance of Officer commands.**

6

7          The allegations in the SAC relevant to the First Claim for excessive force are that police received

8    a call from a concerned citizen about a person carrying a deadly weapon and a bottle of wine on city streets

9    in broad daylight, and warning of a race war.  Request for Judicial Notice ("RJN"), Ex. A, ¶ 29.  The SAC

10   alleges that a witness to Ms. Harmon's conduct that night made a 9-1-1 call to police to report the incident

11   and "within minutes" Deputy Dominguez is alleged to have arrived on the scene.  *Id.*, ¶ 30.[1]  Another

12   witness commented that a man living in a RV behind Past Moon Restaurant might have information about

13   Ms. Harmon.  *Id.*  After "Deputies searched" for Harmon for "more than 20 minutes" but did not find her,

14   the SAC alleges that DOMINGUEZ proceeded "alone" to check out the RV.  *Id.*  There are no allegations

15   that this was a "5150" call or a call to intervene with someone experiencing a mental health crisis.

16         Plaintiffs allege that DOMINGUEZ located the RV behind the Pasta Moon Restaurant, that he

17   approached the RV, knocked on the side of the RV, and "ordered the occupants to exit."  *Id.*, at 31.  In

18   response, Harmon, not the owner of the RV, "looked outside the door" holding the shotgun.  *Id.*  The SAC

19   admits that Harmon "emerged" from behind the RV with the shotgun still in her hands and DOMINGUEZ

20   then fired three rounds from his gun, possibly wounding Harmon in her right arm.  *Id.*

21         It is alleged that Harmon then fired two rounds from her shotgun in the presence of Deputy

22   Dominguez.  *Id.*  Dominguez took cover behind his patrol car and then began shouting orders at Harmon,

23   ordering her to stand holding the shotgun she just fired with both hands over her head and with her back

24   turned to him.  *Id.*  Then, supposedly, Dominguez is alleged to have fired a fourth and fifth shot into

25   Harmon's back.  *Id.*  The SAC alleges that Harmon's shotgun fell from her hands to the ground and "was

26   laying approximately four to six feet away from her."  *Id.*

27

28   _____
     [1] Despite the SAC's claim that the 9-1-1 caller had not been threatened in any way, she obviously felt concerned enough about Ms. Harmon's actions to use 9-1-1 to call the police to report this conduct.

It was at this moment in the SAC's sequence of events that Deputy Baba first arrived on the scene in response to multiple gunfire and with his body-worn camera activated.  *Id*., ¶ 32.  Plaintiffs allege that both Deputies Baba and Dominguez "were shouting orders" at Harmon.  *Id*.  At this point, there is no allegation that Deputy Baba had discharged his weapon yet.  *Id*.

The SAC admits that Harmon then defiantly "attempted to flee" but "realizing she had no escape she turned back towards the officers and screamed at them in frustration."  *Id*.  Then, Harmon inexplicably "ran back to the shotgun that was lying on the ground and as she reached down" to pick it up was shot an additional six times.  *Id*.  To be clear, there are no allegations in the SAC that Deputy Baba fired his weapon until ***after*** Harmon discharged her weapon twice, refused to comply with Deputy Dominguez's orders, tried to flee the scene, screamed at the officers, then ran back towards her shotgun that was lying on the ground in an attempt to grab the shotgun she had just fired twice, ignoring multiple orders from both Deputies Baba and Dominguez.  *Id*.  Prior to that rapidly escalating moment, the SAC admits that Deputy Baba had not used any force whatsoever on Ms. Harmon.

These allegations indicate a potentially intoxicated individual who discharged a shotgun twice in the presence of law enforcement and within city limits thereby posing a potential lethal threat to Deputies Baba and Dominguez as well as other members of the public.  During the January 13, 2022 hearing on Defendants' motion to dismiss and in response to questioning by the court about the First Claim, Plaintiffs admitted that "in this event, Baba was obviously [in] a different situation" than Dominguez and there might be cause to release Baba.  RJN, Ex. B, pp. 13-14 & 17: 2-7.

**B.  The SAC alleges five separate times that it was Dominguez that killed Harmon, not Baba.**

Significant to this motion, the SAC admits five (5) separate times that Ms. Harmon was killed by Deputy Dominguez, not Deputy Baba. The SAC alleges that this action "arises out of the killing of [Ms.] Harmon… by San Mateo County Sheriff's Office ("SMCSO") deputy David Dominguez."  RJN, Ex. A, ¶ 1.  The SAC alleges that Deputy Dominguez "was the SMCSO deputy primarily responsible for Plaintiff's death."  *Id*., ¶ 3.  It further alleges that Harmon stood with her hands above her head and back to Dominguez "at the time he took her life."  *Id*., ¶ 8.  Plaintiffs also allege that Harmon was "fifty-six years' old when she was killed by DOMINGUEZ."  *Id*., ¶ 28.  Finally, the SAC alleges that the San Mateo County Coroner's

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
DEFENDANT JOHN BABA

1    Office "found DOMINGUEZ' seventh shot overall, and the fourth in his second volley of shots…was the

2    primary cause of [Harmon's] death." *Id*., ¶ 32.

3        During the January 13, 2022 hearing on Defendants' motion to dismiss the Second and Third

4    Claims of the SAC, Plaintiffs clarified to the court that the SAC alleges that it was Dominguez that was

5    responsible for Harmon's death.  RJN, Ex. B, p.12: 19-22; p.13: 7-11; p.13: 22-25.  Plaintiffs also admitted

6    during this hearing "there would possibly be cause to release Baba." *Id*., 13-14.

7        Beyond the singular allegation that he discharged his weapon in response to Harmon's attempt to

8    pick up the shotgun she had just fired twice in defiance of several orders from police, there are no other

9    factual allegations in the SAC about Deputy Baba's actions or conduct that evening.

10   **III.    ARGUMENT**

11       **A.  Legal Standard Governing a Motion for Judgment on the Pleadings**

12       "After the pleadings are closed—but early enough not to delay trial—a party may move for

13   judgment on the pleadings." Fed.R.Civ.P. 12(c).  A Rule 12(c) motion challenges the legal sufficiency of

14   the opposing party's *pleadings*. It provides a vehicle for summary adjudication on the merits, after the

15   pleadings are closed but before trial, which "may save the parties needless and often considerable time

16   and expense which otherwise would be incurred during discovery and trial." *Miller v. Indiana Hosp.*, 562

17   F.Supp. 1259, 1268 (WD PA 1983); *Alexander v. City of Chicago*, 994 F2d 333, 336 (7th Cir.

18   1993); *Perez v. Wells Fargo & Co.,* 75 F.Supp.3d 1184, 1187 (ND Cal. 2014) (quoting text)].

19       A motion for judgment on the pleadings brought pursuant to Rule 12(c) provides a means of

20   disposing of cases when all material allegations of fact are admitted in the pleadings and only questions

21   of law remain. *See McGann v. Ernst & Young,* 102 F.3d 390, 392 (9th Cir.1996).  "Analysis under Rule

22   12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must

23   determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal

24   remedy." *Chavez v. U.S.,* 683 F.3d 1102, 1108 (9th Cir.2012).  While the complaint "does not need

25   detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

26   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

27   will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Judgment on the pleadings is

28

appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F3d 922, 925 (9th Cir. 2009).

This includes the *Twombly/Iqbal* "plausibility" standard. *Chavez v. United States*, 683 F3d 1102, 1108-1109 (9th Cir. 2012). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009); *Moss v. United States Secret Service,* 572 F.3d 962, 969 (9th Cir.2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

Similar to a Rule 12(b)(6) motion, in resolving a Rule 12(c) motion, the court can consider (without converting the motion into a motion for summary judgment) (a) the complaint and answer; (b) any documents attached to or mentioned in the pleadings; (c) documents not attached but "integral" to the claims; and (d) matters subject to judicial notice. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F3d 419, 422 (2nd Cir. 2011); *Massey v. Ojaniit*, 759 F.3d 343, 347-348 (4th Cir. 2014).

## B. The First Cause of Action for Excessive Force as against Deputy Baba Must Be Dismissed Because the SAC Admits that the Force He Used Was Objectively Reasonable

In general, all claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as applied in the relevant case law. *Scott v. Harris*, 550 U.S. 372, 381-385 (2007); *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985); *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

In assessing reasonableness, the court should give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, *supra*, 490 U.S. at 396. The Supreme Court has consistently reminded lower courts that the "'reasonableness' of the particular use of force must be judged from the perspective of the reasonable officer on the scene, rather than with 20/20 hindsight." *Id*. (citation omitted); *Estate of Strickland v. Nevada County*, 2021 WL 4443106, *6 (Sept. 28, 2021 E.D. Cal.). In addition, the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of

1   force that is necessary in a particular situation." *Id*., at 396-397.  "Only information known to the officer

2   at the time the conduct occurred is relevant."  *City of Los Angeles v. Mendez*, __ U.S. __, 137 S.Ct. 1539,

3   1546-47 (2017); *Glenn v. Washington Cty.*, 673 F.3d 864, 873, fn. 8 (9th Cir. 2011).  Finally, this analysis

4   does not change for the use of deadly force. *Scott v. Harris*, 550 U.S. 372, 383 (2007).

5          The Ninth Circuit has repeatedly emphasized that the most important factor is "whether the suspect

6   posed an immediate threat to the safety of the officers or others."  *See, e.g.*, *S.B. v. Cty. Of San Diego*, 864

7   F.3d 1010, 1013 (8th Cir. 2017); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020).  If deadly force is

8   used the officer must have "probable cause to believe that the suspect poses a significant threat of death or

9   serious physical injury to the officers or others" *Tennessee v. Garner*, 471 U.S. 1, 3 (1985); *Gonzalez v.

10   City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014). In analyzing this factor, "judges should be cautious

11   about second-guessing a police officer's assessment, made on the scene, of the danger presented by a

12   particular situation." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012).

13          Here, Ms. Harmon posed an "immediate" and significant threat of death or serious injury to

14   Deputies Baba and Dominguez as well to other members of the community.  Harmon was seen by at least

15   two witnesses, maybe three (including the man that owned the RV), of walking the streets of downtown

16   Half Moon Bay on Cinco de Mayo with an open container of alcohol and a long rifle in an agitated state

17   warning of an "impending" war.  RJN, Ex. A, ¶ 29.  Deputy Dominguez learned that a person who lived

18   in an RV behind Pasta Moon Restaurant may have some information about Harmon.  He located the RV,

19   knocked on the door and Harmon (not the owner) looked out the door, saw Dominguez, and then "emerged"

20   carrying the shotgun in her hands.  *Id*., ¶ 31.

21          The SAC admits that Harmon fired her shotgun twice in the presence of law enforcement in

22   response to Dominguez allegedly firing at her three times.  *Id*.  The SAC alleges that, after this exchange

23   of gunfire, Harmon, instead of hiding, taking cover, running off, returning to the RV, or surrendering to

24   police, chose to "emerge[] from behind the RV" with the shotgun still in her hands moving towards

25   Dominguez.  *Id*.  It is alleged that Deputy Dominguez ordered Harmon to stand with the gun above her

26   heard and her back to him.  *Id*.  Then, Deputy Dominguez is alleged to have shot Harmon twice in the

27   back.  *Id*.  It is alleged that the shotgun then fell to the ground about four to six feet away from Harmon.

28   ///

It is at this moment that Deputy Baba first arrives on the scene.  *Id.*, ¶ 32.  What happens next lasted mere seconds.  Because Deputy Baba arrived on the scene on foot within seconds of the alleged three gunshots fired by Dominguez and the two shotgun rounds fired by Harmon, it is reasonable to infer that Deputy Baba heard all five gunshots being fired and, from his perspective as well as the perspective of any reasonable officer, was entering into an active crime scene involving an exchange of gunfire in which additional, possibly even deadly, gunfire could occur.  Analyzed from Deputy Baba's perspective, there was a shotgun on the ground very close to Ms. Harmon and Deputy Dominguez, who had taken cover behind his patrol vehicle in an apparent defensive position, had his gun drawn shouting orders at Harmon. *Id*.  Here, the SAC admits that Deputy Baba did not fire his weapon at this point. *Id*.  Instead, he is alleged to have repeatedly "shout[ed] orders at" Harmon.  *Id*.

Then, the SAC admits that Harmon, in defiance of the two Deputies' repeated orders, tries to flee the crime scene but realizes she has no escape so she turns back towards the officers and screams at them in frustration.  *Id*.  Again, Harmon does not comply with both Deputies commands and instead "ran back" to the shotgun that she had just fired twice and was lying on the ground, reaching down to pick it up.  *Id*. Only then did Deputy Baba fire his weapon.  This entire exchange — from Harmon's emergence from the RV with a loaded shotgun to her being shot while trying to pick up the shotgun — lasted mere seconds.

Based on the foregoing allegations in the SAC, Deputy Baba had probable cause to believe that Harmon posed a significant and immediate threat of death or serious physical injury to himself, Deputy Dominguez and others who may have been in the vicinity of a public restaurant on a holiday evening. Under such circumstances, Deputy Baba's conduct and use of force – which was not deadly force as the SAC makes clear that it was Dominguez's shots that caused Harmon's death – was objectively reasonable under the Fourth Amendment.  *Long v. City & Co. of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007) [when "an individual points his gun in the officer's direction, the Constitution undoubtedly entitles the officer to respond with deadly force"]; *Estate of Strickland v. Nevada County*, 2021 WL 4443106, *6 (Sept. 28, 2021 E.D. Cal.) [motion to dismiss excessive force claim granted where "[suspect] continued to hold a toy gun, sometimes pointing it in the direction of officers…That the firearm turned out to be a replica is irrelevant"…the 'critical inquiry' — considers only the officers' perspective at the time of the shooting"]; *Scott v. Heinrich*, 39 F.3d 912, 913 (9th Cir. 1994) (no constitutional violation where officer fired first after

decedent pointed "long gun" at him and second officer then fired multiple shots at decedent); *City of Tahlequah v. Bond*, No. 20-1668, 142 S.Ct. 9, 211 L.Ed.2d 170 (Oct. 18, 2021) [summary judgment affirmed in favor of police officers who shot and killed suspect after suspect raised hammer behind his head and took stance as if he was about to throw the hammer or charge at officers based on qualified immunity].

The SAC makes incredible, implausible assertions trying to minimize the lethal threat Harmon posed not only to the Deputies but to the general public at large, such as she was walking in the city streets of Half Moon Bay with a loaded shotgun in her hands in a "nonthreatening position" and that she fired the shotgun twice "harmlessly into the air." RJN, Ex. A, ¶¶ 31-32. Discharging a loaded weapon within city limits is a crime, and for good reason. *See*, Half Moon Bay Muni. C. § 9.48.020. According to basic principles of physics and gravity, any bullet fired into the air must return to Earth which could easily strike an innocent bystander walking down the street or mother playing with her child in her backyard.[2]

Based on the foregoing, the SAC admits that Deputy Baba had "probable cause to believe that [Harmon] pose[d] a significant [and immediate] threat of death or serious physical injury" to the Deputies and to other members of the public. *See, e.g.*, *S.B. v. Cty. Of San Diego*, 864 F.3d 1010, 1013 (8th Cir. 2017); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *Tennessee v. Garner*, 471 U.S. 1, 3 (1985). As such, any force used by Deputy Baba was objectively reasonable under the Fourth Amendment and the First Claim against him must be dismissed.

Finally, the SAC goes to great lengths to offer Harmon's purported mental health as a factor that should be considered in analyzing whether her Fourth Amendment rights were violated. RJN, Ex. A., ¶¶ 1, 6, 7, 8, 28. While mental health is a factor that must be considered under a reasonableness analysis (See, *Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001)), there are no allegations in the SAC that Deputy Baba knew Ms. Harmon prior to the night in question, that Deputy Baba had any knowledge that Ms. Harmon had any mental health challenges, or that Deputy Baba was responding to a "5150" call or a call to intervene with someone experiencing a mental health crisis. Since "'reasonableness' of the

---

[2] The court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations," and "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer v. Vaugh*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted).

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANT JOHN BABA

particular use of force must be judged from the perspective of the reasonable officer on the scene, rather than with 20/20 hindsight" (*Graham*, *supra*, 490 U.S. at 396), Ms. Harmon's alleged mental health challenges are irrelevant in ruling on this motion because there are no allegations that Deputy Baba had any knowledge of any alleged mental health issue.

Further, there is no "per se rule" that mentally ill persons must be afforded different treatment than armed criminals. See, *Deorle*, *supra*, 272 F.3d at 1283; *Estate of Strickland v. Nevada County*, 2021 WL 4443106, *7 (E.D.Cal. Sept. 28, 2021) [motions to dismiss complaint granted despite decedent's ongoing mental health issues, that decedent "may have been struggling with mental health issues made the rifle he was carrying no less deadly in the objectively reasonable perspective of" officers]; *Blanford v. Sacramento Cty.*, 406 F.3d 1110, 1117-18 (9th Cir. 2005) (finding the use of deadly force against a mentally disturbed individual armed with a sword objectively reasonable); *Elifritz v. Fender*, 460 F. Supp. 3d 1088, 1114 (D. Or. 2020) (holding that the decedent "posed an immediate threat of serious injury or death to the officers, and it was reasonable for the officers to respond with deadly force, even if [the decedent] was experiencing a mental health crisis.").

Based on the foregoing authorities and analysis, Deputy Baba's use of force, which is alleged to have been nondeadly, was objectively reasonable under the Fourth Amendment and the First Claim for Excessive Force as against Deputy Baba should be dismissed with prejudice.

### C.   Qualified Immunity Applies Here Because There was No Clearly Established Precedent that Deputy Baba's Alleged Conduct Was Unlawful at the Time of the Incident

The U.S. Supreme Court has made clear that "[p]ublic officials are immune from suit under 42 U.S.C. § 1983 unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *City and Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015) (internal citations omitted); *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009).

When a defendant asserts qualified immunity in a motion to dismiss under Rule 12(b)(6) or 12(c), "dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001); *Chavez v. Wynar*, 421 F.Supp.3d 891, 898-899 (N.D. Cal. 2019).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken

judgments" by "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd,* 563 U.S. 731, 743 (2011); *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998). Thus, to defeat qualified immunity, Plaintiff must show both a constitutional violation and that "existing precedent ... placed the statutory or constitutional question beyond debate." *al–Kidd,* 563 U.S. at 741; *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (citations omitted). Plaintiff cannot make either showing here.

Whether a constitutional right is clearly established for purposes of qualified immunity is not defined at a "high level of generality" but rather "must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Sheehan*, 135 S.Ct. at 1775. Thus, "then-existing precedent" must show that the rule is "settled law," meaning "dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority.'" *Dist. of Col. v. Wesby*, 138 S.Ct. 577, 589-90 (2018) (internal citations omitted). "[i]t is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*.

"The rule's contours must be so well-defined that it is 'clear to a reasonable [public official] that his conduct was unlawful in the situation he confronted.'" *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). "This requires a high 'degree of specificity.'" *Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015) (*per curiam*); *Taylor v. Barkes*, 575 U.S. 822, 135 S.Ct. 2042, 192 L.Ed.2d 78 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

The Supreme Court has articulated a discretionary two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 232, 129 S.Ct. 808 (citations omitted). The Court may exercise its discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 242, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

///

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANT JOHN BABA

1    Whether the defendant violated a constitutional right and whether that right was clearly

2    established at the time of the alleged violation are pure questions of law for the court.  *See Serrano v.*

3    *Francis,* 345 F.3d 1071, 1080 (9th Cir. 2003); *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003).

4    The plaintiff bears the initial burden of proving the right was clearly established.  *See Sweaney v. Ada*

5    *Co., Idaho*, 119 F.3d 1385, 1388 (9th Cir. 1997); *Romero v. Kitsap Co.*, 931 F.2d 624, 627 (9th Cir. 1991).

6    Here, there is no clearly established precedent prohibiting Deputy Baba's conduct.  In fact, recent

7    United States Supreme Court opinion confirms that Baba's conduct is subject to and therefore protected

8    by qualified immunity.  *City of Tahlequah v. Bond*, No. 20-1668, 142 S.Ct. 9, 11-12 (Oct. 18, 2021).

9    In *City of Tahlequah v. Bond*, officers responded to a 911 call from a woman who claimed her ex-

10   husband (Rollice) was in her garage, was intoxicated, and would not leave exclaiming "its going to get

11   ugly real quick."  The officers encountered Rollice who was fidgeting with something in his hand and

12   refused to allow officers to pat him down for weapons.  One officer took one step towards Rollice and

13   Rollice took one step back.  Police ordered him to stop but Rollice kept walking towards the back of the

14   garage where his tools were hanging over a workbench.  Rollice then grabbed a hammer and turned to face

15   the officers.  He held the handle of the hammer in both hands as if preparing to swing a baseball bat, and

16   pulled it up to shoulder level.  The officers drew their guns and ordered him to drop the hammer.  He did

17   not. Instead, he took a few steps to his right behind a piece of furniture.  He emerged with the hammer

18   raised high above his head and took a stance as if he was about to throw the hammer or charge the officers.

19   In response, two officers fired their weapons, killing Rollice.  *Id.*, at 10-11.

20   The Supreme Court declined to rule on whether the officers violated Rollice's Fourth Amendment

21   rights. However, it ruled that "on this record, the officers plainly did not violate any clearly established

22   law."  *Id.*, at 11.  "Neither the panel majority nor the respondent has identified a single precedent finding

23   a Fourth Amendment violation under similar circumstances.  The officers were thus entitled to qualified

24   immunity."  *Id.*, at 12.

25   Similarly here, application of qualified immunity as to the First Claim against Deputy Baba is

26   warranted.  The SAC admits that Harmon fired her shotgun twice in the presence of police.  She then tried

27   to flee the scene and, realizing she had no escape, ran back towards the officers and the shotgun, screaming

28   at them, ignoring their commands, and reached to pick up the shotgun.

Only then did Deputy Baba fire his weapon.  Much like the officers in *City of Tahlequah*, had Deputy Baba not fired his gun when he did, he could have been killed or seriously injured.  On this record, and as alleged in the SAC, Deputy Baba is entitled to qualified immunity and the First Claim should be dismissed against him.  Unless Plaintiffs can, on these allegations, identify a clearly established precedent rendering Deputy Baba's conduct unlawful at the time of the incident, the First Claim for excessive force against him should be dismissed based on application of qualified immunity.

### D.  The Fourth Claim for Wrongful Death Should be Dismissed Against Baba Because the SAC Fails to Allege that He Committed an Underlying Tort Resulting in Harmon's Death

The elements of a cause of action for wrongful death under California state law are an underlying tort (negligence or other wrongful act), the resulting death of a person, and the damages, consisting of the pecuniary loss suffered by the heirs.  *Estate of Osuna v. Co. of Stanislaus*, 392 F.Supp.3d 1162, 1184 (E.D.Cal. 2019); *Lattimore v. Dickey*, 239 Cal.App.4th 959 (2015); Cal. Code of Civ. Proc. § 377.60(a).

As argued above, Deputy Baba did not breach his duty to use reasonable force in response to Ms. Harmon's attempt to retrieve the shotgun from the ground and her refusal to comply with orders by the Deputies.  Significantly, the SAC admits that ***before*** Deputy Baba discharged his weapon, Ms. Harmon fired her shotgun twice in the presence of law enforcement, tried to flee the crime scene, refused to comply with several commands by law enforcement, and then "ran back to the shotgun that was lying on the ground" reaching down to pick it up.  RJN, Ex. A, ¶ 32.  Therefore, Plaintiffs have failed to identify Deputy Baba's breach of any legal duty (i.e., an underlying tort) that would support a wrongful death claim against him and the Fourth Cause of Action fails as a matter of law.

Moreover, the SAC unequivocally alleges – five (5) separate times - that Ms. Harmon was killed by Deputy Dominguez, not Deputy Baba.  The SAC alleges that this action "arises" out of the killing of Ms. Harmon by "Deputy David Dominguez."  RJN, Ex. A, ¶ 1.  The SAC alleges that Deputy Dominguez was "primarily responsible for Plaintiff's death."  *Id.*, ¶ 3.  It further alleges that Harmon stood with her hands above her head and back to Dominguez "at the time he took her life."  *Id.*, at ¶ 8.  Plaintiffs further allege that Harmon was "fifty-six years' old when she was killed by DOMINGUEZ."  *Id.*, at ¶ 28.  Finally, the SAC alleges that the San Mateo County Coroner's Office "found DOMINGUEZ' seventh shot overall, and the fourth in his second volley of shots…was the primary cause of [Harmon's] death."  *Id.*  Beyond

the singular allegation that he discharged his weapon in response to Harmon's attempt to pick up her shotgun after ignoring several orders, there are no other factual allegations in the SAC about Deputy Baba's actions or conduct that evening.

Additionally, during the January 13, 2022 hearing on Defendants' second motion to dismiss, Plaintiffs admitted that it was the fourth shot from Deputy Dominguez that caused Ms. Harmon's death. RJN, Ex. B, 13: 7-11. Plaintiffs also admitted that "Baba…came into a different situation than Officer Dominguez. I would think that there would possibly be cause to—release Baba." *Id.*, 13: 22-25 & 14:1-2. Further still, the court seemed to agree, at that time, that Plaintiffs "haven't stated a claim against Baba for wrongful death." *Id.*, 14: 5-10. Plaintiffs conceded the court's point. *Id.*, 14-15.[3]

Therefore, assuming the truth of the allegations in the SAC coupled with Plaintiffs' concession at the January 13, 2022 hearing that Deputy Baba did not cause Ms. Harmon's death, Plaintiffs' Fourth Cause of Action must fail as to Deputy Baba because two essential elements of a wrongful death claim have not been factually alleged against him.

**E. Leave to Amend Should Be Denied Unless Plaintiffs Can Make an Offer of Proof to the Court That Amendment is Possible.**

Although Rule 12(c) does not mention leave to amend, courts have discretion to grant a Rule 12(c) motion with leave to amend. *Lonberg v. City of Riverside* (CD CA 2004) 300 F.Supp.2d 942, 945 (C.D. Cal. 2004) [finding Rule 12(c) motion "is functionally identical" to a Rule 12(b)(6) motion]. The SAC is Plaintiffs' third iteration of alleging these claims. Plaintiffs admitted during the January 13, 2022 hearing that Baba was in a different situation than Dominguez and conceded that possibly Baba should be dismissed. RJN, Ex. B, pp. 13-14 & 17: 2-7.

Plaintiffs also admitted that the allegations of the SAC claim that Dominguez is the officer that killed Harmon. *Id.*, p.12: 19-22; p.13: 7-11; p.13: 22-25; pp. 13-14. Under such circumstances, it would appear that amendment to state facts against Baba to support the excessive force claim and the wrongful death claim are not possible at this time. Defendants request that Defendant Deputy Baba be dismissed with prejudice.

---

[3] Such admissions by Plaintiffs to the court and on the record would seem to require that Deputy Baba be voluntarily dismissed by Plaintiffs in compliance with Rule 11 of the Federal Rules of Civil Procedure.

1

## IV.    CONCLUSION

2

For the foregoing reasons, Defendants request that the Court grant this motion to dismiss.

3

4    Dated:  May 25, 2022                           Respectfully submitted,

5                                                   JOHN C. BEIERS, COUNTY COUNSEL

6

7                                                   By: _____

8                                                         Joseph F. Charles, Deputy
                                                          Karen Rosenthal, Deputy
9                                                         Daniel McCloskey, Deputy

10                                                  Attorneys for Defendants
                                                    COUNTY OF SAN MATEO, DAVID
11                                                  DOMINGUEZ. JOHN BABA, CITY OF HALF
                                                    MOON BAY
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28